Michael S. Kim
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
Tel:    +1 212 488 1200
Fax:   +1 212 488 1220
michael.kim@kobrekim.com

*Attorneys for Creditor, United States Territory,
Commonwealth of the Northern Mariana Islands*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

In re:

WILLIAM H. MILLARD,

    Individual Debtor in a
    Foreign Proceeding
                                        No. 13-11625 (REG)

---------------------------------------------------------------X

In re:

PATRICIA H. MILLARD,

    Individual Debtor in a
    Foreign Proceeding
                                        No. 13-11626 (REG)

---------------------------------------------------------------X

**AMENDED STATEMENT OF ISSUES TO BE RAISED ON APPEAL**

**Preliminary Statement**

       The Commonwealth of the Northern Mariana Islands, a United States territory (the "**Commonwealth**"), appeals an Order entered on November 4, 2013 by the U.S. Bankruptcy Court of the Southern District of New York ("**Bankruptcy Court**"). That Order granted a

1

Verified Petition (the "**Chapter 15 Petition**" or "**Petition**") filed by Kenneth M. Krys and Margot MacInnis in their capacity as foreign representatives (the "**Foreign Representatives**") of the above-captioned debtors William H. and Patricia H. Millard (the "**Millards**").  Specifically, the Order granted recognition of orders of bankruptcy issued by the Grand Court of the Cayman Islands (the "**Cayman Court**")  pursuant to Chapter 15 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq.

First, the Chapter 15 Petition should not have been granted because it fails to satisfy the applicable statutory requirements.

Specifically, as an initial matter, the Millards also lack standing to seek relief under Chapter 15 because the eligibility requirements of Section 109(a) of the U.S. Bankruptcy Code—including the requirement that the debtor must reside or have a domicile, a place of business or property in the United States— have recently been held to apply to foreign debtors in a Chapter 15 case.  *See  Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 2013 WL 6482499 (2d Cir. Dec. 11, 2013).  This means that in addition to the various requirements for relief contained in Chapter 15 itself, to have standing to pursue the instant Chapter 15 Petition, the Millards themselves have to satisfy the threshold eligibility requirements under Section 109(a) of the Bankruptcy Code to be a debtor: namely, the foreign debtor must reside or have a domicile, a place of business or property "in the United States."  Apart from the fact that the Millards' Statement of Affairs and Assets in the Cayman bankruptcy proceeding listed only a purported property interest in the Commonwealth—which, while a U.S. territory, is not within the United States proper for purposes of Section 109(a)—the Millards have strenuously sought to deny any presence or property in this country or be subject to jurisdiction here.  Accordingly, there is no basis to believe that they can satisfy this residency requirement so as to be considered

"debtors." This is entirely consistent with the notion that the Chapter 15 Petition in this case constitutes a misuse of the statutory scheme, which was designed to enable foreign debtors to have assets or some business operation in the U.S. subject to the authority of a foreign representative acting as a trustee for this purpose, and not designed to enable debtors like the Millards who maintain no ties to the U.S. to call upon its bankruptcy courts for relief.

Moreover, by operation of 11 U.S.C. § 101(23), Chapter 15 recognition is expressly limited to foreign proceedings brought "for the purpose of reorganization or liquidation." Here, it is indisputable that the Cayman proceedings and resulting Cayman bankruptcy orders for which recognition was sought below had nothing to do with this purpose. Instead, they were designed merely to vest the Foreign Representatives with standing to pursue their Chapter 15 Petition in which they sought to obtain a stay of execution of the Commonwealth's U.S. District Court judgments against the Millards (the "**Judgments**") pending their adjudication in an independent action of the validity of the Judgments on the Millards' behalf. Yet, as the Cayman Court acknowledged, those Judgments would in no event be enforceable in the Cayman Islands (which does not recognize foreign tax judgments) even if found to be valid and thus they could have no cognizable impact on a determination of the Millards' overall liabilities for purposes of the Cayman bankruptcy filings much less upon the reorganization or liquidation of the Millards' estates.

Further, even if a party might be able to satisfy the technical requirements for seeking Chapter 15 recognition by bringing a "foreign proceeding," we submit that the Bankruptcy Court should nevertheless decline to recognize that proceeding or any order or judgment issuing therefrom where there is no question under the circumstances that the foreign proceeding and Chapter 15 Petition were not undertaken in good faith. The mere fact that a foreign court issued

3

something that the court chose to call an "insolvency" order does not automatically entitle the foreign proceeding to recognition pursuant to Chapter 15 where an examination of the record reveals that the debtors are "solvent" under any rational definition and that the purposes and effects of the foreign proceeding and Chapter 15 Petition were solely and in bad faith to attempt to avoid the consequences of rulings by U.S. Magistrate and District Court judges adverse to the debtors in a two-party dispute with the Commonwealth, effectively their sole creditor. Those rulings included orders that the debtors appear before the U.S. District Court for the Middle District of Florida and a report and recommendation that the Millards would be required to post security for any stay of execution on the Judgments pursuant to Federal Rule 62. Under the circumstances of this case, recognition under Chapter 15 no more than authorizes an abuse of the Bankruptcy Code.

## **Relevant Background**

In 1994, the U.S. District Court for the Northern Mariana Islands entered default judgments for unpaid taxes against each of the Millards (who were U.S. citizens when their tax dispute arose in 1987) in actions brought by the Commonwealth. Although the Millards had for several years sought to avoid any physical, legal or economic ties to the U.S. prior to approximately 2011, at the time that the Chapter 15 Petition was filed in May 2013, the parties to the dispute were litigating in—among other places—the U.S. District Court for the Middle District of Florida. Indeed, the Millards themselves sued the Commonwealth there to invalidate the Judgments and the Commonwealth initiated supplementary proceedings in aid of execution against the Millards and several of their associates in an effort to collect on the Judgments.

On April 17, 2013, Magistrate Judge Spaulding issued a report and recommendation in connection with the Millards' own action in the Middle District of Florida seeking to vacate the

Judgments. Magistrate Judge Spaulding determined that: (a) the court should abstain from considering the issues raised in the Millards' action until after the U.S. District Court of the Northern Mariana Islands rules on them; and (b) any enforcement actions in that court could only be stayed in the interim upon the Millards' motion for stay under Fed. R. Civ. P. 62(b)(4) accompanied by the posting of a bond or other security.

Three weeks prior to Magistrate Judge Spaulding's report and recommendation, the Commonwealth filed a motion for proceedings supplementary and for other attendant post-judgment relief in the District Court for the Middle District of Florida. On March 26, 2013, the District Judge granted the motion, initiating supplemental proceedings against the Millards and impleading into the proceedings various entities and nominees associated them. Among other things, that court ordered the Millards to provide responses to interrogatories and further required them and all of the impleaded parties to appear for a show cause hearing on April 8, 2013, and to submit to examinations in the courthouse beginning on April 8, 2013.

That hearing and those examinations were later continued, upon motion of the Millards themselves, to 9 a.m. on May 20, 2013, and a temporary restraining order against dissipation of assets previously issued by that court extended up and through the date of the hearing. On April 17, 2013, the Commonwealth filed a motion for civil contempt against the Millards for their failure to provide answers to the court-ordered interrogatories (which were due at the latest by April 10, 2013). The Millards did not respond to that motion or any of the other subsequent motions despite having appeared in that action.

Four days before the May 20, 2013 show cause hearing in the Middle District of Florida (which had been continued at the Millard's request from April 8), the Foreign Representatives filed the Chapter 15 Petition on behalf of the Millards' estates in relation to the Millards'

Cayman Court filings made on May 10, 2013.  The Foreign Representatives requested a provisional stay of execution pursuant to Section 1519 pending a ruling on recognition.

The Millards and their associates asked the Middle District of Florida to stay the show-cause hearing pending the ruling on the Chapter 15 petition.  The motion was denied by District Judge Antoon II, but the Millards did not appear as ordered on May 20, 2013.  A hearing was held before the Bankruptcy Court on May 20, 2013 (which the Millards did not attend either) concerning the Foreign Representatives' request for a temporary restraining order to issue pursuant to 11 U.S.C. 1519.  The request was granted during the afternoon of May 20, 2013, after which the District Court for the Middle District of Florida on its own initiative stayed and "administratively closed" its pending cases—including the Millards' own action seeking to set aside the Judgments and the Commonwealth's enforcement action.  On June 17, 2013, the Bankruptcy Court issued a temporary restraining order that, among other things, stayed all litigation currently pending at that time in the U.S.

On June 3, 2013, the Cayman Court issued an order in connection with the petitions previously filed there on May 10.  The Cayman Court's opinion states unequivocally that the insolvency petitions were being granted for the sole purpose of enabling the Foreign Representatives to bring the Chapter 15 Petition to obtain a stay of the Commonwealth's U.S. enforcement actions and to vest standing in the Foreign Representatives to litigate over the validity of the Judgments before the U.S. courts on behalf of the Millards.  The Cayman Court further confirmed that absent the Judgments, the Millards' assets far exceeded liabilities and that the Judgments would not be recognized as enforceable debts as a matter of Cayman Islands law in the context of the Millards' "insolvencies."

The Foreign Representatives, by interim report dated September 23, 2013, have since amended the original declared value of the Millards' assets from approximately US $46 million to US $11,819,965, confirmed they are to liquidate several companies which hold the Millards' assets around the world, and disclosed they have already incurred at least US $725,152 in fees since their appointments despite the absence of any litigation activity in the U.S. courts. The combined declared debts of the Millards other than the Judgments total far less than the fees already incurred by the Foreign Representatives.

By Order of November 4, 2013, this Court recognized the Cayman proceedings pursuant to Chapter 15.

### Issues on Appeal

The issues to be raised on appeal are as follows:

1.   Whether the Millards lack standing under Chapter 15 to seek recognition under the statute where: (a) the Second Circuit recently held in *Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 2013 WL 6482499 (2d Cir. Dec. 11, 2013). that the eligibility requirements of Section 109(a) of the U.S. Bankruptcy Code—including the requirement that the debtor must reside or have a domicile, a place of business or property in the United States—have recently been held to apply to foreign debtors in a Chapter 15 case; and (b) the Millards have not claimed to possess any property or business "in the United States" proper and they have repeatedly claimed to have severed all significant physical and economic ties with the U.S. as well as the Commonwealth in an attempt to avoid being subject to jurisdiction here.

2.   Whether the Foreign Representatives' Chapter 15 Petition fails to satisfy the governing statutory requirements where by operation of 11 U.S.C. § 101(23), a foreign proceeding cannot be recognized unless it was brought "for the purpose of reorganization or

liquidation," and here: (a) the relevant proceeding was indisputably brought solely to enable the Foreign Representatives to seek a stay from this Court of execution of two tax judgments pending their adjudication of the validity of those judgments on the Millards' behalf; and (b) as the Cayman Court expressly acknowledged, regardless of the outcome of such an adjudication, these foreign tax judgments would not be enforceable in the Cayman Islands or have any impact on the determination of the Millards' liabilities and distribution of their assets in that proceeding.

3. Even if Chapter 15 could be applied as a statutory matter, whether a U.S. bankruptcy court should nevertheless decline to recognize a foreign proceeding that the record reflects was not brought for a purpose related to the foreign debtors' insolvency and payment of their debts, but was instead undertaken with the goal of conferring standing in the putative foreign representatives to: (a) obtain an unsecured stay of execution to evade adverse rulings of a U.S. non-bankruptcy court against the foreign debtors in a two-party dispute with their primary creditor over an unpaid tax obligation; and (b) enable the putative representatives during that stay to challenge on the debtors' behalf the validity of tax judgments of a U.S. non-bankruptcy court.

Dated: January 14, 2014
      New York, New York

                                       Respectfully submitted,

                                       By:    s/ Michael S. Kim
                                                Michael S. Kim

                                       KOBRE & KIM LLP
                                       800 Third Avenue
                                       New York, New York 10022
                                       Tel: +1 212 488 1200
                                       Fax: +1 212 488 1220
                                       michael.kim@kobrekim.com

                               *Attorneys for Creditor, United States Territory,*
                               *Commonwealth of the Northern Mariana Islands*